**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID T. BREAKWELL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 08-389 |
| | ) | |
| v. | ) | Judge Fischer |
| | ) | Magistrate Judge Bissoon |
| ALLEGHENY COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Plaintiffs' Motion for Summary Judgment (Doc. 25) be denied, and Defendants' Motion for Summary Judgment (Doc. 22) be granted.

### II.  REPORT

**BACKGROUND**

Plaintiffs David and Christine Breakwell ("Plaintiffs," or "Mr. Breakwell"/ "Ms. Breakwell") have brought this Section 1983 action against Allegheny County and two employees of its Office of Children, Youth & Family Services ("CYF"), Linda DeDominicis and Alexis Terlecki.  *See generally* Am. Compl. (Doc. 19).  Ms. DeDominicis, a supervisor, and Ms. Terlecki, a caseworker, were assigned to monitor Plaintiffs' paternal granddaughter, Fawn.  *See generally id.*  Plaintiffs' son, Paul Breakwell, II ("Father"), and his wife, Bernadette Breakwell ("Mother"), proved incapable of providing adequate parental support for Fawn, and Plaintiffs took custody of, and eventually adopted, the child.  *See generally id. and* discussions *infra*.

Defendants allegedly violated Plaintiffs' constitutional rights by pursuing dependency proceedings regarding Fawn and, more generally, by investigating and supervising Plaintiffs' provision of care. *See generally* Am. Compl. at Count I (stating claims under 42 U.S.C. § 1983 based on purported violations of First, Fourth, and Fourteenth Amendments).[1] Plaintiffs also bring a state law claim for intentional infliction of emotional distress. *See id.* at Count II.

The events underlying Plaintiffs' claims, in chronological order, are as follows:[2]

| | |
|---|---|
| 10/15/05 | Mr. Breakwell and Father arrived at the Sunrise Hotel in Monroeville and found Mother in a non-responsive state, with Fawn and her biological brother, Paul, unsupervised. Father and Mr. Breakwell agreed that Fawn would be taken into Plaintiffs' custody and care. *See* Pls.' Facts (Doc. 27) at ¶¶ 10-12. |
| 10/20/05 | Defendants came to Plaintiffs' residence to conduct a home inspection and check on Fawn's well-being. Defendants found Plaintiffs' home to be clean, comfortable, and appropriate for Fawn's care. *See id.* at ¶¶ 15-17. |
| 11/23/05 | An email from a CYF worker indicated that she "received a call from an angry grandfather," Mr. Breakwell, stating concerns regarding his grandson Paul's safety. *See* Doc. 27 at pg. 43 of 228. Ms. DeDominicis responded that Ms. Terlecki had recently visited the Mother, who was working with "in-home service[s]." *See id.* Ms. DeDominicis stated: "We are somewhat concerned with [Mr. Breakwell] having the little girl [Fawn] in his home[,] and are working with [Mother] and the in-home services worker to have [Mother] go . . . get her." *Id.* |

---

[1] In discussing the actions of Mses. Terlecki and DeDominicis, the Court will refer to them as "Defendants" or "CYF," unless the conduct of the individual Defendants is of significant distinction.

[2] Given that Defendants are entitled to summary judgment, the Court generally will rely on Plaintiffs' version of events. As appropriate, the undersigned will note any disputed facts, although none of the parties' disputes are material for the purposes of summary judgment.

| | |
|---|---|
| 12/13/05 | Father and Mother were arrested and placed in jail.  Pls.' Facts at ¶ 25.  Defendants scheduled an emergency shelter hearing for the following day.  *Id.* at ¶ 27. |
| 12/14/05 | The emergency shelter hearing was held before Common Pleas Judge Kim Berkeley Clark.  *See* Doc. 27 at pg. 47 of 228.  Although Plaintiffs allege that Defendants advised them that they were not required to attend, Mr. Breakwell appeared with counsel and testified at the hearing.  *Compare* Pls.' Facts at ¶¶ 28-30 *with* Doc. 27 at pgs. 57-62 of 228 (Mr. Breakwell's testimony). |
| | At the hearing, Fawn and her siblings were represented by a lawyer-*guardian ad litem*.  *See* Doc. 27 at pg. 48 of 228.  Defendants' counsel advised that CYF would be filing a dependency petition regarding Fawn, and that Defendants would seek to place her with her maternal aunt.  *Id.* at 50.  Defendants sought to place Fawn with her aunt because Plaintiffs were unable to care for Fawn's brother Paul, and CYF wanted "the siblings to remain together."  *See id.*  Defendants also were concerned with Fawn's continued placement with Plaintiffs, given Mr. Breakwell's alleged suggestion that Fawn be adopted by a "doctor in Fox Chapel that had met [her only] once."  *See id.* at 57. |
| | Judge Clark entered a shelter order, providing for the continued placement of Fawn with Plaintiffs, and for Mr. Breakwell to serve as her medical and educational guardian.  Pls.' Facts at ¶ 36.  The order directed Defendants to make arrangements for "interactionals" and evaluations to be conducted on all the children and caregivers involved in the anticipated dependency proceedings, and Judge Clark suspended visits for Mother and Father pending further order of the court.  *See* Doc. 27 at pgs. 21-22 of 228.  Judge Clark also directed that "visits must [be allowed to] occur" between Fawn and her siblings.  *Id.* at 46. |
| 1/12/06 | Defendants conducted a second inspection of Plaintiffs' home.  Pls.' Facts at ¶ 59. |
| 1/20/06 | Plaintiffs instituted proceedings in the Common Pleas' Adult Family Division, seeking custody of Fawn.  *See* Doc. 27 at pgs. 70-77 of 228. |

3

| | |
|---|---|
| 1/23/06<br>1/27/06 | Defendants filed a petition and amended petition for dependency regarding Fawn. *See* Pls.' Facts at ¶¶ 39-40. Defendants stated concerns regarding Fawn's continued placement with Plaintiffs, based on: Mr. Breakwell's alleged initial reluctance to care for Fawn "long-term," and his prior suggestion that she be adopted by "[the d]octor in Fox Chapel"; Plaintiffs' unwillingness to care for Fawn's brother, Paul; Plaintiffs' allowance of "only . . . limited, supervised access to Fawn," and the fact that she had only one visit with her siblings since the shelter hearing; and the changing of Fawn's middle name from "Chinok" to "Maria," for the purposes of school registration, causing Defendants to believe that Fawn's Cherokee ancestry was being neglected. *See* Doc. 27 at pg. 91 of 228.<br><br>Plaintiffs were permitted to intervene in the dependency proceeding, and the proceeding was consolidated with Plaintiffs' custody action. *See* Pls.' Facts at ¶¶ 50-52. |
| 1/27/06 | Plaintiffs claim that Defendants conducted another inspection of Plaintiffs' home. Pls.' Facts at ¶ 60; Defs.' Resp. (Doc. 34) at ¶ 60 (denying same). |
| 2/11/06 | Judge Clark entered an order directing that Fawn "remain in the care of [Plaintiffs,]" and finding that Plaintiffs were "not [then] the legal guardians of the child." Doc. 27 at pg. 112 of 228. |
| 4/11/06 | Defendants submitted to Judge Clark a supplemental report discussing in detail the visits that had taken place between Fawn and Mother. *See* Defs.' Facts (Doc. 23) at ¶ 13. Plaintiffs assert that Defendants, in facilitating those visits, violated Judge Clark's directive that an order of court be obtained before visits with the Parents commenced. *See* Pls.' Resp. (Doc. 29) at ¶ 13. Plaintiffs also allege that Defendants told them that, if Plaintiffs failed to make Fawn available for visits, CYF would immediately remove her from their custody. *See* Pls.' Facts at ¶ 68; *but see* Defs.' Resp. at ¶ 68 (denying same). |
| 4/19/06 | The parent advocate representing Mother presented a motion for visitation. Defs.' Facts at ¶ 15. The motion alleged that Plaintiffs' counsel "faxed a letter . . . stating that Fawn would not be brought to any [scheduled] visits." *See* Ex. 7 to Doc. 23. The motion for visitation was argued before Judge Clark, and Fawn's *guardian ad* |

4

          *litem* agreed that Mother's supervised visitation should continue. *See* Defs.' Facts at ¶¶ 15, 17. The same day, Judge Clark entered an order granting Mother's motion and directing CYF to arrange for supervised visits. *Id.* at ¶ 18.

5/22/06        Following an evidentiary hearing, Judge Clark entered an "Interim Order of Court," holding that: Plaintiffs stood *in loco parentis* to Fawn; Plaintiffs were to enjoy interim physical custody of Fawn; Defendants' petition for dependency was dismissed; Mother's supervised visits would continue; and Plaintiffs, Mother and Father were required to participate in the "Generations [P]rogram" as part of the custody proceeding in the Adult Family Division. *See* Ex. 10 to Doc. 23; Pls.' Facts at ¶ 81.

7/10/06        Fawn's *guardian ad litem* appealed Judge Clark's order, challenging the conclusion that Plaintiffs stood *in loco parentis*, and challenging the determination that said ruling was in the best interests of the child. *See* Ex. 11 to Doc. 23.

7/19/06        Defendants DeDominicis and Terlecki appeared at Plaintiffs' home, purportedly "demanding entry." *See* Pls.' Facts at ¶ 83. Ms. Breakwell refused, and, according to Plaintiffs, Ms. DeDominicis unsuccessfully "attempted to force her way into the residence." *See id.* at ¶ 84. In support of this assertion, Plaintiffs cite Ms. Breakwell's deposition testimony: "I can't remember the whole conversation, but it went back and forth . . . why they couldn't come in. [M]y sister's dog was barking[,] and . . . I yelled at the dog and . . . I had my arm [holding] the screen door open . . . . [Ms.] DeDominicis . . . had her hand on the door and kind of pulled to step in when I turned around to get the dog. She [said]: Can't I come in because of the dog? And I [said]: No, you are not coming into my home[,] you have no right. . . . I wouldn't let her in." *See* Doc. 27 at pg. 151 of 228.

5/22/07        The Superior Court of Pennsylvania reversed Judge Clark's May 22, 2006 decision. *See* <u>In re F.B.</u>, 927 A.2d 268 (Pa. Super. 2007), *appeal denied*, 954 A.2d 577 (Pa. Jul. 22, 2008).[3]

---

[3] The District Court may take judicial notice of the Superior Court's decision. *See generally* <u>Pawlak v. Nix</u>, 1996 WL 560360, *13 (E.D. Pa. Sept. 30, 1996) (citations omitted).

>           The Superior Court concluded that the Breakwells' *in loco parentis*
>           status was "irrelevant to the dependency proceeding,"
>           and Plaintiffs therefore lacked standing to intervene.  *See id.*,
>           927 A.2d at 273.  Citing a Supreme Court decision dating back to
>           1981, the Superior Court held that "the doctrine of *in loco parentis*
>           should not be employed when determining whether a child . . .
>           is dependent and[,] thus, whether agency involvement should be
>           initiated."  *Id.* at 274 (citations omitted).  The case was remanded,
>           with the instruction that "the [trial] court must not consider [the
>           Breakwells'] alleged *in loco parentis* status in revisiting the
>           dependency action."  The Superior Court was "cognizant,"
>           however, that a grant of legal custody of Fawn to the Breakwells
>           may render the dependency proceeding moot.  *See id.*

6/5/08       The Court of Common Pleas granted an adoption to Plaintiffs,
             making Fawn their child.  *See* Doc. 27 at pg. 228 of 228.

## ANALYSIS

Plaintiffs claims are founded on the central premise that, given the Breakwells' *in loco parentis* status and CYF's failure to identify shortcomings regarding their care and supervision of Fawn, Defendants had "no basis to pursue a dependency action" or to supervise Plaintiffs' custody.  *See* Am. Compl. at ¶¶ 88-89.  Plaintiffs claim violations of their First Amendment rights to familial association and integrity; their Fourth Amendment right to be free from unreasonable searches and seizures; and their Fourteenth Amendment rights to privacy, to maintaining custody and care of Fawn, to familial association and integrity, and their rights to substantive due process.  *See id.* at ¶¶ 97-100.

None of Plaintiffs' allegations establish a violation of their constitutional rights.  As the Pennsylvania Superior Court clearly held, Plaintiffs' *in loco parentis* status was <u>irrelevant</u> to "determining whether [Fawn] . . . [wa]s dependent and[,] thus, whether [Defendants'] involvement should [have been] initiated."  *See* discussion *supra*.  And though Plaintiffs urge that the Superior Court's determination was erroneous, *see, e.g.*, Pls.' Opp'n Br. at 2-5,

the undersigned's review of the law reveals no basis to disturb the decision.  Even were the Court to conclude otherwise, a review of the state court determination would be barred under the *Rooker-Feldman* doctrine.  *See, e.g.*, <u>Winters v. Office of Children & Youth Servs.</u>, 2006 WL 1984658, *3 (W.D. Pa. Jul. 13, 2006) (Cohill, J.) (refusing to entertain § 1983 challenge to state court's termination of plaintiff's parental rights; *Rooker-Feldman* prohibits "lower federal court jurisdiction over claims that were . . . inextricably intertwined with adjudication by a state's courts," and "a federal action is inextricably intertwined with a state adjudication . . . [w]here <u>federal relief can only be predicated upon a conviction that the state court was wrong</u>") (citation to quoted source omitted, emphasis added).

As for CYF's investigative and supervisory functions independent of the dependency proceeding, Plaintiffs' counsel has identified no legal authority demonstrating that Defendants' actions were unconstitutional.  There simply is no basis to conclude that Defendants' conduct, either before Judge Clark's May 22, 2006 "Interim Order of Court" or after, violated any provision of the United States Constitution.  To the contrary, Defendants' job responsibilities arguably required them to continue monitoring Fawn's welfare.  The mere belief of Plaintiffs, or their counsel, that CYF was divested of authority or responsibility to monitor Fawn, based on Plaintiffs' presumed or actual *in loco parentis* status, does not a constitutional violation make.

These conclusions dispel the notion that Plaintiffs' First or Fourteenth Amendment rights to familial association, family integrity, privacy, and/or maintaining custody and care of Fawn, were violated.

Regarding the Fourth Amendment, the only remotely plausible claim asserted by Plaintiffs is their contention that Ms. DeDominicis "attempted to force her way into [their] residence."  *See* discussion *supra*.  A review of Ms. Breakwell's deposition testimony, the only

7

evidence offered in support of Plaintiffs' contention, tells a different story.  *See id.* (indicating that Ms. DeDominicis "had her hand on the door and kind of pulled to step in when [Ms. Breakwell] turned around to get the dog.  She [said]:  Can't I come in because of the dog?  And I [said]:  No, you are not coming into my home[,] you have no right. . . .  I wouldn't let her in.").  Reading the evidence in a light most favorable to Plaintiffs, Ms. Breakwell's testimony is insufficient to demonstrate that Ms. DeDominicis entered, or forcibly attempted to enter, the Breakwells' home.  Neither Plaintiffs' counsel, nor the Court's independent research, has identified precedent finding similar allegations sufficient to state a colorable Fourth Amendment claim.

Finally, Plaintiffs' substantive due process claims require them to demonstrate that Defendants' conduct was "so clearly arbitrary," "ill-conceived or malicious" that it "can properly be said to 'shock the conscience'"; "mere negligence by a social worker [does not] violate a parent's or a child's substantive due process right[s]."  Miller v. City of Philadelphia, 174 F.3d 368, 376 (3d Cir. 1999) (citation omitted, quotations in original); *accord* Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000) (citation to quoted source omitted); *see also id.* at 809-10 ("only the most egregious official conduct can be said to be arbitrary in the constitutional sense") (citation to quoted source omitted).  At best, Plaintiffs' evidence reveals disagreement between Defendants and the Breakwells regarding which placement would be in the best interests of Fawn.  *See* discussion *supra* (discussing indication that, despite Plaintiffs' good care, CYF believed it would be in Fawn's best interests to be placed in same home as her biological brother).  Otherwise, any presumed mistakes made in connection with Defendants' supervision at most rose to the level of negligence, and that is not enough.  *See., e.g., id.* (noting Plaintiffs' contention that Defendants should not have initiated Fawn's visitation with Mother in absence of

court order).  As a matter of law, Defendants' purported conduct falls well short of "shocking the conscience."[4]

In sum, this case boils down to Plaintiffs' and their counsel's disagreement with Defendants (and Fawn's *guardian ad litem*, who appealed Judge Clark's order establishing Plaintiffs' *in loco parentis* status) regarding which placement would be in the best interests of Fawn.  Although reasonable minds may differ in this regard, Plaintiffs' mere disagreement with Defendants does not establish a violation of constitutional rights.  Even if it did, Defendants are entitled to absolute immunity in connection with the dependency proceedings, and qualified immunity in all other respects.

Under Third Circuit law, social workers "have absolute immunity . . . with respect to whether to bring a child dependency hearing."  Bayer v. Monroe County Children & Youth Servs., -- F.3d --, 2009 WL 2477627, *5 (3d Cir. Aug. 14, 2009) (citation omitted).  Absolute immunity extends to all "actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings.  [Social workers'] immunity is broad enough to include the

---

[4] As referenced above, Plaintiffs allege, and Defendants deny, that Mses. DeDominicis and Terlecki threatened to remove Fawn from Plaintiffs' custody if Plaintiffs refused to allow visitation with her Mother and siblings.  *See* discussion *supra*.  Even accepting the Breakwells' allegations as true, Plaintiffs have failed to demonstrate that the subject of Defendants' alleged coercive statements (*i.e.*, making Fawn available for visitation) resulted in a deprivation of constitutional rights.  This is not, for example, a case where a parent was told that, unless "he left his home and separated himself from his daughter until the investigation was complete[d]," the caseworker "would take [his child] physically from the home that night and place her in foster care."  *See, e.g.*, Croft v. Westmoreland County Children &Youth Servs., 103 F.3d 1123, 1125-27 (3d Cir. 1997) (reversing grant of summary judgment on substantive due process based on recited facts); *see also* discussion *supra* (noting Judge Clark's ratification and ordering of continued visitation between Fawn and Mother); *see also id.* (Fawn's *guardian ad litem* agreed in court that Mother's visits should continue) *and id.* (discussing Mother's successful motion for visitation).  Given the subject and context of the purported coercive statements here, the Court cannot say that Defendants' alleged conduct rose to the level of conscience-shocking. *See* Nicini, 212 F.3d at 810 ("[t]he exact degree of wrongfulness necessary to reach the conscience-shocking level depends upon the circumstances of a particular case") (citation and internal quotations omitted).

formulation and presentation of recommendations to the court in the course of such proceedings." Ernst v. Child & Youth Servs. of Chester County, 108 F.3d 486, 495 (3d Cir. 1997).

Here, absolute immunity extends to most of the actions of which Plaintiffs complain. *See, e.g.*, Am. Compl. at ¶¶ 88-89, 91-92 ("CYF made no allegations regarding the care and supervision being provided to Fawn by Plaintiffs . . . as a basis [for] claim[ing] that Fawn was a dependent child"; Defendants "had no basis to pursue a dependency action"; Defendants "acted without probable cause and without a reasonable basis to believe that Fawn was a dependent child"; and Defendants "acted pursuant to [CYF's] policy, custom or practice of . . . pursu[ing] dependency action[s]") (emphasis added). Irrespective of Plaintiffs' assertion that Defendants acted unlawfully in bringing dependency proceedings, and the *Rooker-Feldman* bar to such a challenge, Defendants are entitled to absolute immunity regarding the core allegations forming the bases of Plaintiffs' claims.

To the extent that any aggrieved conduct fell outside the scope of the dependency proceedings and the preparations therefor,[5] Defendants are entitled to qualified immunity. Under that doctrine, social workers are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bayer at *3 (citation to quoted source omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted. . . . This inquiry . . . must be undertaken in light of the specific context of the case,

---

[5] *See generally* Bayer, 2009 WL 2477627 at *5 ("absolute immunity does not apply to investigative or administrative actions taken by child welfare workers outside the context of a judicial proceeding") (citation to quoted source omitted).

not as a broad general proposition, . . . and [it] turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at \*4 (citation to quoted source omitted).

Plaintiffs have failed to demonstrate that Defendants' investigative and/or administrative actions violated clearly established constitutional rights. Instead, Plaintiffs assert that their "rights to family integrity were clearly established and communicated to Defendants on multiple occasions by counsel for Plaintiff[s]." *See* Pls.' Opp'n Br. (Doc. 30) at 13; *see also* Pls.' Facts at ¶¶ 69-71 (asserting that Defendants were "informed on multiple occasions by counsel for Plaintiffs" that their actions were unconstitutional). Just because Plaintiffs' counsel said it was so did not make it so, and Plaintiffs have failed to demonstrate that Defendants' actions violated clearly established constitutional rights.[6]

Nearly all of Plaintiffs' specific legal arguments, moreover, are founded on their counsel's interpretation of Pennsylvania law. *See, e.g.*, Pls.' Br. (Doc. 26) at 2-3, 5-9 (relying on counsel's conclusions regarding *in loco parentis* rights and Pennsylvania's definition of "a dependent child"). For the purposes of qualified immunity, "[f]ederal constitutional

---

[6] Notably, Plaintiffs have not identified any legal authority demonstrating that Defendants' administrative or investigative activities violated federal law. Counsel's citation to broad, general propositions, stated within materially distinguishable contexts, cannot suffice. *Compare, e.g.*, Pls.' Br. at 5-6, 9 (citing Troxel v. Granville, 530 U.S. 57 (2000) (addressing paternal grandparents' petition for visitation with grandchildren born out-of-wedlock); Cooper v. Oklahoma, 517 U.S. 348 (1996) (Oklahoma statute presuming criminal defendants competent to stand trial); Santosky v. Kramer, 455 U.S. 745 (1982) (procedural due process requirements under New York statute allowing state to terminate parents' rights upon finding that child was 'permanently neglected'"); Quilloin v. Walcott, 434 U.S. 246 (1978) (constitutionality of Georgia statute denying unwed father power to prevent adoption of illegitimate child by stepfather); Stanley v. Illinois, 405 U.S. 645 (1972) (unwed father's challenge to Illinois law dictating that "the children of unwed fathers become wards of the State upon the death of the mother"); *and* Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000) (high school student's § 1983 action based on swim team coach's efforts to have her take pregnancy test)) *with* Bayer, 2009 WL 2477627 at \*3 (inquiry regarding clearly established rights "must be undertaken in light of the specific context of the case," not through "broad general proposition[s]").

standards[,] rather than state [laws]," control. Bayer, 2009 WL 2477627 at *4 n.6 (citation to quoted source omitted); *accord* Brown v. Muhlenberg Twp., 269 F.3d 205, 221 (3d Cir. 2001) ("[i]n determining whether a legal principle is clearly established, . . . we cannot look to state law") (citation omitted).

For all of the reasons stated above, Plaintiffs have failed as a matter of law to demonstrate violations of their constitutional rights, and, even if they could, Defendants' actions are protected under the doctrines of absolute and qualified immunity. Given Plaintiffs' inability to state viable constitutional claims, it follows that their *Monell* claims against Allegheny County are unavailing. Domenech v. City of Philadelphia, 2009 WL 1109316, *15 (E.D. Pa. Apr. 23, 2009) ("for there to be municipal liability, there . . . must be [an underlying] violation of plaintiff's constitutional rights") (citation to binding Third Circuit authority omitted).

Finally, Plaintiffs' state law claims for intentional infliction of emotion distress ("IIED") fail for essentially the same reasons as do their substantive due process claims. *Compare* discussion *supra* (finding that Defendants' conduct fell well short of "shocking the conscience") *with* Griffin v. Municipality of Kingston, 2009 WL 1794775, *10-11 (M.D. Pa. Jun. 23, 2009) (under Pennsylvania law, IIED claim requires plaintiff to demonstrate conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society") (citation to quoted source omitted).

**CONCLUSION**

Defendants have demonstrated their entitlement to summary judgment regarding all of Plaintiffs' claims. Accordingly, Plaintiffs' Motion for Summary Judgment (Doc. 25) should be denied, and Defendants' Motion for Summary Judgment (Doc. 22) should be granted.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by September 10, 2009. Responses to objections are due by September 22, 2009.


August 24, 2009                                    s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States Magistrate Judge

cc (via email):

All Counsel of Record